BOSE CORPORATION, Plaintiff,

v.

CONSUMERS UNION OF U. S.,
INC., Defendant.

Civ. A. No. 71–481–J.

United States District Court,
D. Massachusetts.

Jan. 8, 1980.

Blair L. Perry, Hale & Dorr, Boston, Mass., for Bose Corp.

Michael N. Pollet, Marshall Beil, Karpatkin, Pollet & LeMoult, New York City; Nancy Gertner, Silverglate, Shapiro & Gertner, Boston, Mass., for Consumers Union of U.S., Inc.

RULING ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

JULIAN, Senior District Judge.

This is an action brought by the plaintiff, Bose Corporation, against the defendant, Consumers Union of U. S., Inc. seeking damages for alleged product disparagement, unfair competition, and violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The plaintiff alleges that it was harmed by false statements contained in an article published in the defendant's publication, "Consumer Reports."

The defendant's motion for summary judgment and the affidavits and memoranda offered in its support[1] were filed on September 26, 1979. As grounds for its motion the defendant states that the actual

1. In addition to the motion for summary judgment the following documents were filed by the defendant:

1) Defendant's Statement of Uncontested Facts

2) Affidavit of Arnold L. Seligson, dated September 25, 1979
3) Affidavit of Monte Florman, dated September 25, 1979

malice standard announced in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), is applicable in this case and that the plaintiff cannot establish that the statements published by the defendant were made with either actual or common law malice. The defendant also states that the plaintiff cannot establish that the statements published by the defendant were false statements of fact rather than statements of opinion.

The plaintiff's opposition to the defendant's motion for summary judgment and the documents offered in support of the opposition[2] were filed on October 4, 1979. The plaintiff contends that there is clear and convincing evidence to support a finding that the defendant published false statements of fact about the Bose 901 loudspeaker with knowledge that the statements were false or with reckless disregard for the truth or falsity of the statements.

Under Fed.R.Civ.P. 56, the Court may grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show 1) that there is no genuine issue as to any material fact, and 2) that the moving party is entitled to judgment as a matter of law. In making these determinations the Court must view the record in the light most favorable to the party opposing the motion and indulge all inferences

favorable to that party. *Hahn v. Sargent,* 523 F.2d 461, 464, (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). After a thorough examination of all the relevant documents[3] filed in this case, the Court has concluded that there are material facts as to which there is a genuine issue and that the defendant's motion for summary judgment must therefore be denied. The facts as to which there is a genuine issue include, but are not limited to, the two following questions:

1) Whether the statements published by the defendant in its Consumer Reports article about the Bose 901 loudspeaker were false or were based on underlying facts which were false;

2) Whether the defendant published the statements contained in its Consumer Reports article about the Bose 901 loudspeaker with knowledge that the statements were false or with reckless disregard for the truth or falsity of the statements.

*Whether the Defendant's Statements Were False*

In its Consumer Reports article reviewing the Bose 901 loudspeaker, the defendant stated that when a panel of listeners heard records played through the Bose 901 loudspeaker system "individual instruments heard through the *Bose* system seemed to grow to gigantic proportions and tended to

---

4) Affidavit of Alan Lefkow, dated September 26, 1979

5) Affidavit of Michael N. Pollet, dated September 25, 1979. This document was ordered stricken as an affidavit because it was composed entirely of argument rather than facts. It was considered as part of Defendant's Memorandum In Support Of Motion For Summary Judgment.

6) Defendant's Memorandum In Support Of Motion For Summary Judgment

7) Exhibits To Defendant's Motion For Summary Judgment

8) Defendant's Reply Memorandum In Support Of Motion For Summary Judgment.

**2.** In addition to the Plaintiff's Opposition to Defendant's Motion for Summary Judgment, the following documents were filed by the Plaintiff:

1) Plaintiff's Reply to Defendant's Statement of Uncontested Facts

2) Matter Set Forth in "Plaintiff's Second Request for Admission" and Admitted In Whole or In Part by Defendant

3) Matters Set Forth in "Plaintiff's Second Request for Admissions" and Not Admitted In Whole or In Part by Defendant

4) Affidavit of Amar G. Bose, dated October 3, 1979

5) Transcript of the Deposition of Arnold L. Seligson (four volumes)

6) Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment

7) Plaintiff's Memorandum In Response To "Defendant's Reply Memorandum In Support Of Motion For Summary Judgment."

**3.** In addition to the documents enumerated in notes 1 and 2, *supra,* the Court examined all other pleadings, answers to interrogatories, depositions, admissions, and affidavits on file in considering this motion.

wander about the room." The affidavit of the president of Bose Corporation, Amar G. Bose, which was submitted in support of the plaintiff's opposition to the motion for summary judgment, states that the phenomenon of widened and wandering instruments described in the defendant's article is a scientific impossibility. (Affidavit of Amar G. Bose, dated October 3, 1979 [hereinafter Bose Affidavit] at p. 4). Dr. Bose received a Doctor of Science degree in electrical engineering from the Massachusetts Institute of Technology (M.I.T.) in 1956. He has been a member of the faculty of M.I.T. since 1956 and has taught courses in acoustics there since 1967. The defendant concedes for the purposes of this action that Dr. Bose qualifies under the Federal Rules of Evidence as an expert in the field of loudspeaker design. (Bose Affidavit at p. 1, Defendant's Responses To Plaintiff's Second Request For Admissions at p. 4). The affidavit of Arnold L. Seligson, submitted in support of the defendant's motion for summary judgment, states that "Consumers Union reported accurately and faithfully to our readers what we heard in our tests" and that "I know what I heard . . . ." (Affidavit of Arnold L. Seligson dated September 25, 1979 [hereinafter Seligson Affidavit] at p. 17). Seligson is Chief of the Electronics Division of Consumers Union and was primarily responsible for conducting and supervising the loudspeaker tests which were the basis of the Consumer Reports article about which the plaintiff complains. (Seligson Affidavit at p. 1).

Whether Seligson, as a panelist in the test of the Bose 901 loudspeaker, actually heard instruments grow to gigantic proportions or wander about the room is a question of fact, not opinion, which must be resolved at trial rather than on a motion for summary judgment. The credibility of the witnesses involved, Dr. Bose and Mr. Seligson, must be assessed before resolving such a factual question.

The defendant's article reviewing the Bose 901 loudspeaker also states, "If you do consider buying the system, note well this fact: The *Bose* requires a rather gigantic amount of power. CU recommends you have an amplifier of 50 watts per channel for the deepest bass response." In his deposition Seligson explained how he arrived at the conclusion that the Bose 901 loudspeaker required a "gigantic" amount of amplifier power. (Deposition of Arnold L. Seligson [hereinafter Seligson Deposition] at 196–211). Dr. Bose states in his affidavit that he examined the deposition testimony of Seligson. Dr. Bose also states that if his understanding of Seligson's testimony is correct, Seligson was proceeding on an assumption or theory which was invalid, and that any competent audio engineer would have known that that theory was invalid. (Bose Affidavit at 6–8). Seligson's affidavit states that the Consumer Reports article accurately reflected the defendant's test data and the true state of facts. (Seligson Affidavit at 22). The question thus posed—whether the defendant's statement that "The *Bose* required a rather gigantic amount of power" was false or was based on underlying facts that were false—is once again a question of fact as to which there is a genuine issue. The existence of such a factual question precludes summary judgment. Fed.R.Civ.P. 56.

*Whether the Defendant's Statements Were Published With Actual Malice*

The defendant contends that, even if the statements published by the defendant in the Consumer Reports article were false, the plaintiff cannot establish that the defendant published those statements with "actual malice," as required by *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Assuming, without deciding, that the actual malice standard of *New York Times* is applicable in this case, the plaintiff would be required to prove at trial, by clear and convincing evidence, that the defendant published the statements contained in its Consumer Reports article with the knowledge that they were false, or with reckless disregard of whether they were false or not. *New York Times v. Sullivan, supra,* at 279–80, 84 S.Ct. 710. For purposes of the motion for summary

judgment, however, the plaintiff is required to show that there is a genuine issue of material fact concerning the existence of actual malice.[4] For the issue to be "genuine" under Rule 56(c) there must be "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

The defendant has submitted affidavits of its employees which declare their good faith belief in the accuracy of the Consumer Reports article reviewing the Bose 901 loudspeaker. (Affidavit of Arnold L. Seligson, dated September 25, 1979, at p. 29; Affidavit of Monte Florman, dated September 25, 1979, at p. 2; Affidavit of Alan Lefkow, dated September 26, 1979, at p. 2). Although such professions of good faith do not necessarily exonerate the defendant, the plaintiff bears the burden of responding to declarations of good faith by introducing facts from which the existence of actual malice might be inferred. *Reliance Insurance Co. v. Barron's,* 442 F.Supp. 1341, 1350 (S.D.N.Y.1977).

As previously discussed, *supra* p. 3–5, the plaintiff alleges that certain statements made by the defendant were false. Falsity alone, however, does not prove that the statements were published with actual malice. There must be additional facts from which the factfinder might reasonably conclude that the statements were published with the knowledge that they were false or with reckless disregard of whether they were false or not. *Meeropol v. Nizer,* 381 F.Supp. 29, 32 (S.D.N.Y.1974), *aff'd in part, rev'd in part,* 560 F.2d 1061 (2d Cir. 1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978).

In this case the plaintiff contends that Arnold Seligson, an employee of the defendant who participated in testing the Bose 901 loudspeaker and who helped write the Consumer Reports article in question, knew that certain statements in the article were false. The facts relied upon by the plaintiff in support of that contention are as follows.

The defendant's article stated that when a panel of listeners heard records played through the Bose 901 system "individual instruments heard through the *Bose* system seemed to grow to gigantic proportions and tended to wander about the room." Dr. Bose states in his affidavit that these phenomena of widened and wandering instruments are scientifically impossible. (Bose Affidavit at p. 4). Thus, according to the plaintiff, the panel could not have heard these phenomena and the statement that they did hear them was false. The plaintiff further contends that because Seligson was a member of the listening panel (Seligson Deposition at p. 190) he must have known that the statement was false and therefore the statement was published by the defendant with the knowledge that it was false.

The defendant's article also stated that the Bose 901 loudspeaker system "requires a rather gigantic amount of power." As discussed previously, *supra,* pp. 4–5, the plaintiff contends that this statement was false. The affidavit of Dr. Bose states that any competent audio engineer would have known that the statement was false. (Bose Affidavit at p. 8). Because Seligson, who claims to be a competent audio engineer (Seligson Affidavit at pp. 3–4), supervised the tests and made the computations that led to the publication of the statement about the Bose 901's power requirements (Seligson Deposition at 196–211, Seligson Affidavit at p. 1), the plaintiff contends that Seligson must have known that the statement was false.

4. The Supreme Court recently noted that because actual malice is a subjective matter calling the defendant's state of mind into question, it "does not readily lend itself to summary disposition." *Hutchinson v. Proxmire,* 443 U.S. 111, 120, n. 9, 99 S.Ct. 2675, 2680, 61 L.Ed.2d 411 (1979). *See also Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

According to the plaintiff the motive for Seligson's preparation of these allegedly false statements about the Bose 901 loudspeaker was Seligson's desire to suppress any competition by the Bose 901 system with his own recently invented and patented loudspeaker (Seligson Deposition at 326–336, Bose Affidavit at pp. 2–3).

Indulging all reasonable inferences favorable to the plaintiff, the Court cannot say that a rational factfinder could not find that the proposed evidence shows, with convincing clarity, that the defendant published the statements about the Bose 901 loudspeaker with actual malice. Thus, there is a genuine issue of material fact, namely, the existence of actual malice, which requires the factfinder to resolve the parties' differing versions of the truth at trial. Therefore, with respect to Count III of the complaint[5], which alleges disparagement of the plaintiff's product, the motion for summary judgment is denied.

In view of the Court's conclusion that there is a genuine issue of material fact concerning the existence of actual malice, the defendant is not entitled to summary judgment even if the actual malice standard of *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), is applicable in this case. Therefore, in ruling on this motion, the Court need not and does not express any opinion about the applicability of the *New York Times* actual malice standard to the case at bar.

The defendant's motion for summary judgment is also directed to Count I of the complaint, which alleges unfair competition, and Count II of the complaint, which alleges that the defendant published false statements about its own magazine in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). With respect to these two counts, however, the defendant's motion faces the same obstacle that it confronted when applied to Count III, namely, the existence of genuine issues of material fact.

The basis for the claims made in Counts I and II is the publication by the defendant of statements representing that the defendant's product ratings would be "as free of bias as it is possible to make them." The plaintiff claims that Seligson's interest in his own patented loudspeaker caused him to be biased against the Bose loudspeaker system. Thus, according to the plaintiff, the defendant's statements concerning freedom from bias were false. The plaintiff contends that it is entitled to relief for such false representations both under the Lanham Act and under a common law theory of unfair competition.

In response to the plaintiff's allegations concerning Seligson's alleged bias, the defendant argues that Seligson could not possibly have been biased because, at the time of the loudspeaker tests involved in this case (1969–70), Seligson had no realistic hopes for the commercial use of his invention as a loudspeaker (Seligson Deposition at 391). However, the plaintiff points out that on June 15, 1970, Seligson and a man named Bertram Menden entered into a contract granting Menden a right of first refusal on Seligson's loudspeaker. The contract also called for Seligson and Robert S. Lanier to build a model of Seligson's loudspeaker in return for $2,000 "to be used *only* for the purpose of building a model for demonstration purposes . . ." (Seligson Deposition at 357). The fact that Seligson entered into such a contract calls into question his testimony that he had no realistic hopes for the commercial use of his invention. Seligson's credibility must be assessed before the Court can determine whether Seligson was in fact biased against the Bose loudspeaker system. The Court does not find it possible to assess the credibility of Seligson or any of the other affiants on the basis of the present record.

The claims stated in both Count I and Count II of the complaint depend upon the existence of bias on the part of Seligson

5. The complaint referred to is the plaintiff's Consolidated Complaint (Amended), filed on October 15, 1973.

against the Bose loudspeaker system. Whether Seligson's interest in his own recently invented and patented loudspeaker in fact caused him to be biased is a question of fact which the Court cannot resolve without assessing the credibility of the witnesses. Therefore, with respect to Counts I and II of the complaint, the defendant's motion for summary judgment is also denied.

Because there are genuine issues of material facts concerning each of the three Counts of the complaint, the defendant's motion for summary judgment is denied in its entirety.